Floyd Calvin ROBERTS, Appellant,

v.

The STATE of Texas, Appellee.

No. 03–98–00588–CR.

Court of Appeals of Texas,
Austin.

Dec. 23, 1999.

Rehearing Overruled Feb. 10, 2000.

Patricia J. Cummings, Round Rock, for Appellant.

John M. Bradley, First Asst. Dist. Atty., Georgetown, for State.

Before Justices JONES, KIDD and PATTERSON.

J. WOODFIN JONES, Justice.

A jury convicted Floyd Calvin Roberts of one count of delivering marihuana to a minor. *See* Tex. Health & Safety Code Ann. § 481.122 (West Supp.1999). After hearing testimony on punishment and appellant's plea of true to a prior felony conviction, the jury assessed sentence at life in prison. Roberts contends that the evidence was factually and legally insufficient to support the conviction and that the

court erred by overruling his objection to the State's jury argument. We will affirm the judgment.

## BACKGROUND

Roberts befriended eighth-graders Jessica Easley, Kristi Jordan, and Stephanie Ellison while working as a school bus driver. With at least one of their mother's permission, he took the girls in his truck to the mall, their friends' homes, and other places. Easley testified that Roberts also gave her and her friends marihuana and alcohol. She testified that he bought the marihuana at meetings set up on the phone and bought drug paraphernalia at a store in Austin. He usually kept the marihuana in his room, but sometimes put it in his truck. In his truck, he put it in a hole near the stereo. She said she and her friends dropped marihuana seeds in the truck when cleaning the marihuana. (Easley also testified that Roberts sexually assaulted her; because the jury acquitted him of the various sexual assault charges, we will not detail that evidence.) Easley's mother testified that she several times suspected that her daughter was high after spending time with Roberts; she admitted that she did not know for sure that Roberts had provided the marihuana to her daughter.

Jordan and Ellison also testified that Roberts gave them marihuana while they were with Easley. Both had smoked marihuana before they knew Roberts; Jordan said marihuana has a distinct odor and particular effects on the user. Jordan said Roberts gave them marihuana many times; they said he kept it in his glove compartment, his dresser drawer, and a boot. The girls denied they got this marihuana from Jordan's boyfriend. The girls agreed that Roberts never smoked marihuana with them because he feared a random drug test showing marihuana use would cost him his bus-driving job. Ellison, after initially denying she took marihuana with her on spring break to Kansas, admitted her aunt caught her with marihuana while

there; she testified, however, that her mother did not know about her marihuana use before the State subpoenaed Ellison for this trial.

When Easley told her school counselor shortly after spring break (which ended Sunday, March 22, 1998) about her activities with Roberts, the counselor informed the city police. On April 9, 1998 in a search of Roberts's home, the police found .07 grams of marihuana loose in Roberts's dresser drawer. They also found a couple of marihuana seeds and a burnt piece of paper in the floorboard of his truck. The crime lab technician stated that tests showed the substance in the drawer was marihuana; though he did not test the seeds, he opined that they were marihuana seeds.

The jury acquitted Roberts of indecency with a child, sexual assault, and one count of delivery of marihuana to a minor. The jury convicted him of the remaining count of delivery of marihuana to a minor. After hearing evidence regarding Roberts's past, the jury assessed sentence at life in prison.

## DISCUSSION

■ By two points of error, Roberts contends that the evidence is legally and factually insufficient to support his conviction. When reviewing the legal sufficiency of the evidence under point of error one, we will view the evidence in the light most favorable to the prosecution to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 318–19, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). When reviewing the factual sufficiency of the evidence under point of error two, we will view the evidence without a presumption; we can set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *See Clewis v. State*, 922 S.W.2d 126, 135 (Tex.Crim.App.1996). The jury is the sole judge of the credibility of the witnesses and of the weight to give their

testimony. *Miller v. State*, 909 S.W.2d 586, 593 (Tex.App.—Austin 1995, no pet.). The State may prove the identity of a controlled substance based on an admission by the accused. *See In re L.G.*, 728 S.W.2d 939, 942 (Tex.App.—Austin 1987, writ ref'd n.r.e.); *see also Bright v. State*, 556 S.W.2d 317, 322 (Tex.Crim.App.1977) (witness's testimony that appellant told him substance was heroin is admissible and probative of substance's identity).

■ Roberts focuses his sufficiency complaints on whether the State proved that he delivered marihuana to Easley. Though the State introduced marihuana found in Roberts's house and car, it did not offer any marihuana given to Easley. (The testimony is that the girls consumed the marihuana he provided.) Roberts contends the girls' testimony is insufficient to show he gave Easley marihuana. Roberts contends that no evidence shows he ever represented he was giving Easley marihuana. He also argues that the girls were not qualified to identify marihuana and did not ever describe the substance he allegedly provided. He contends that the marihuana recovered in April is not probative of whether he gave Easley marihuana on March 1; he contends that many intervening events could account for the presence of marihuana in his house and car.

Contrary to Roberts's assertion, we find passages of Jordan's testimony reveal Roberts saying that the substance he gave Easley was marihuana:

Q. Did Calvin [Roberts] ever discourage or try to get you or Jessica, the times that y'all were together, not to smoke; or did he ever encourage y'all to smoke?

A. He really encouraged it.

Q. Can you explain that?

A. Well, if we were just sitting there watching TV, he would ask us if we wanted to smoke some marijuana. So, you know, he would say go get it here or sometimes he would go get it.

* * *

Q. Let's talk a little bit about how you know that what he gave you was marijuana. Does marijuana have a distinct odor to you?

A. Yes, ma'am, very distinct.

Q. And could you look at it and know it to be marijuana?

A. Yes, ma'am, it's—it's, you know, pretty obvious.

Q. Did Calvin Roberts indicate to you it was marijuana?

A. Yes, ma'am.

On redirect examination, the following exchange occurred:

Q. [Roberts] just—I would ask him— or he would just tell us that he bought it, you know, "I bought some marijuana yesterday" or something. He never told me from who, and I was never with him.

A. The occasions that you described about smoking marijuana with Calvin, there have been multiple occasions. Is that correct?

* * *

A. Yes ma'am.

Q. And you indicated earlier that on some of those occasions Calvin would direct y'all to go get it from his—places in his room. Is that correct?

A. Yes ma'am.

These passages are similar to the admissions by defendants held to be sufficient to prove the identity of a controlled substance. *See Bright*, 556 S.W.2d at 322; *L.G.*, 728 S.W.2d at 942.

Other testimony from the girls supports the conclusion that Roberts provided marihuana to Easley. All three girls claimed familiarity with marihuana and asserted repeated instances in which Roberts gave Easley marihuana. Easley and Jordan said they had smoked marihuana before meeting Roberts. Ellison and Jordan tes-

tified that they recognize marihuana by sight and smell. The girls talked about characteristics of marihuana like stems and seeds that are removed before smoking. All three girls testified that Roberts provided the marihuana to them many times; Ellison and Easley said they accompanied him when he bought it from someone he arranged to meet at a service station. All three girls testified they smoked Roberts's marihuana together. The girls described smoking marihuana in a pipe; Jordan and Easley described the screens in the pipes used to prevent accidental ingestion of the marihuana, and Jordan recognized that the screen introduced into evidence had not been used. Easley said smoking it made her high. Jordan said smoking it made her tired, hungry, and red-eyed.

Roberts argues that the girls' testimony is no evidence of the nature of the substance because they were not qualified to identify it. This is not a dispute over admissibility because Roberts did not object to the admission of the evidence. Rather, Roberts bases this argument on the court of criminal appeals' disregard of testimony by nonchemists purporting to identify a substance as heroin; the court concluded that, because many substances resemble heroin, testimony from narcotics officers and laymen based on the appearance of a substance admitted without objection nevertheless was not probative evidence that the substance actually was heroin. *See Bright,* 556 S.W.2d at 321–22; *see also Curtis v. State,* 548 S.W.2d 57, 59 (Tex.Crim.App.1977) (test showing substance was opiate derivative did not prove substance was heroin because other opiate derivatives resemble heroin).[1] Roberts argues for a similar ruling here because other green, leafy, seedy substances resemble marihuana. *See Holliman v. State,* 692 S.W.2d 120, 122 (Tex.App.—Waco 1985, pet. ref'd).

We conclude that, even without Roberts's admissions, the girls' testimony was some evidence that the substance Roberts gave Easley was marihuana. Lay witnesses can give opinion testimony that is rationally based on their perception and helpful to a clear understanding of their testimony or determination of a fact in issue. Tex.R. Evid. 701. The nature of the substance provided is a fact in issue, and there is no objection in the record that the State did not lay the proper predicate for the girls to identify the substance. Courts tend to accord some weight to identifications of marihuana by nonchemists. *See Fierro v. State,* 706 S.W.2d 310, 317–18 (Tex.Crim.App.1986) (police officer can identify marihuana based on experience); *Medina v. State,* 149 Tex.Crim. 249, 193 S.W.2d 196, 198 (1945) ("When the witness testified that he knew marihuana, that he had smoked it and dealt in it, he would be qualified to so testify."). The fact that other substances resemble marihuana does not negate the girls' testimony because they did not just look at it, they smoked it and testified regarding its effects. There is also testimony that Roberts told them he was giving them marihuana. Their testimony is some evidence that the substance was marihuana. Their lack of training and chemical analysis goes to the weight the jury accords their testimony. *See id.*

Roberts correctly argues that the seizure of marihuana from Roberts weeks after he allegedly gave marihuana to Easley does not itself provide sufficient evidence to support the conviction. It does, however, lend support to the girls' testimony. The girls testified regarding places Roberts habitually kept the marihuana he gave Easley. Weeks later, the police found marihuana or residue in those same places, thus making more believable their testimony that the substance he gave them was marihuana.

---

1. These conclusions resemble the supreme court's conclusion that expert testimony based on flawed science "is unreliable and, legally, no evidence." *Merrell Dow Pharmaceuticals, Inc. v. Havner,* 953 S.W.2d 706, 714 (Tex.1997).

Roberts contends that gaps and credibility issues undermine the girls' testimony and render it insufficient to support the verdict. He argues that the jury's acquittal of him on the sexual offenses clearly shows rejection of Easley's testimony, and the acquittal on the March 15 delivery evinces rejection of all the girls' testimony; because there is no distinct testimony regarding a March 1 marihuana delivery, he argues, the evidence cannot support conviction on that count. He theorizes that the girls used him to enable their use of marihuana and other activities their parents prohibited, but turned against him when they tired of him; he points to Ellison's blaming him as the source when she was caught with marihuana on spring break in Kansas, and Easley's description of an argument with Roberts during which she criticized him for not taking her where she wanted and he criticized her for cursing too much. He also points to the fact that Easley concealed her drug use and lied to her mother about her drug use and her whereabouts during spring break.

We nonetheless conclude that the evidence is both legally and factually sufficient to support the judgment. The indictment charges that Roberts gave Easley, a minor, marihuana on or about March 1, 1998. There is no dispute that Easley was a minor. All three girls testified that Roberts gave Easley marihuana repeatedly between January 1998 and mid-March 1998; because all of these dates precede the indictment, the testimony supports the judgment under the definition of "on or about" given. *See Mireles v. State*, 901 S.W.2d 458, 459 (Tex.Crim.App.1995). The jury was free to pick which aspects of the girls' testimony to believe, even to convict on the charge of delivery on March 1 and to acquit on the charge of delivery on March 15. *See Miller*, 909 S.W.2d at 593. The jury may have found the evidence believable when all three girls testified about pre-spring break activities (March 1), but may have lumped the March 15 delivery charge in with the alleged spring-break sexual offenses, testimony about which they found unconvincing at guilt-innocence. The girls' limited descriptions of the substance, the way they consumed it, and its effects on them all support the finding that the substance provided was marihuana, as does the police's discovery of marihuana four weeks later in the places the girls' testimony indicated police would find it. No evidence indicated that the substance was not marihuana. Though the deterioration of the girls' relationship with Roberts theoretically might have caused them to concoct their testimony, it is also possible that it merely freed them from not wanting to expose him; there is no evidence that they lied about his delivery of marihuana to Easley.

■ The lack of direct evidence of Roberts providing Easley marihuana does not require that we reverse the conviction. Circumstantial evidence need not exclude all reasonable alternative hypotheses. *Sonnier v. State*, 913 S.W.2d 511, 516 (Tex. Crim.App.1995). Neither our ability to imagine other sources of marihuana nor the fact that no marihuana delivered to Easley was introduced requires that we overturn the conviction. Viewed in the light most favorable to the verdict, the evidence is legally sufficient to support the conviction. Even viewed without that presumption, the evidence is factually sufficient to support the conviction because the verdict was not against the overwhelming weight of the evidence. We overrule points one and two.

■ By point of error three, Roberts contends that the district court erred by overruling his objection made during this portion of the State's final argument:

> Who got caught? What evidence did you hear that Jessica Easley got caught with anything? By a parent, by a counselor, by a school teacher? Was that question asked of Mrs. Pulatie? "Well, did you catch her, is that how all of this came to be?"
>
> No, Jessica didn't get caught. What happened? After spring break she went

to her friend, who she trusted, and disclosed that she and Calvin had been smoking marijuana, had been drinking, and the sexual acts that occurred to her over spring break.

[Defense counsel]: Objection, Your Honor, that is not in evidence.

THE COURT: Overruled.

[Prosecutor]: That is how all of this came to pass. And then Ms. Gubitz then reported it to the official. This is how all of this began. Nobody got caught doing anything except the defendant.

If Jessica wanted to continue this lie of getting alcohol and drugs and enjoyed these sexual acts with the Defendant, that she wanted it to continue because she wanted the drugs and alcohol that badly, it could have happened. She didn't have to report it. But what did she tell you? "I just wanted it to stop."

Roberts contends the portion of the State's argument to which he objected falls into none of the acceptable categories of jury argument. Those categories include (1) summation of the evidence; (2) reasonable deduction from the evidence; (3) answer to defense counsel's argument; and (4) a plea for law enforcement. *See Coble v. State*, 871 S.W.2d 192, 204 (Tex.Crim.App.1993).

The State contends that the argument is an answer to defense counsel's argument and is either summative of or a reasonable deduction from the evidence. In her argument, Roberts's attorney told a story about her cousin who lied when he denied owning the marihuana pipe his mother found in his jacket. She compared her cousin's behavior to Easley's conduct, arguing that when Easley was caught lying about her whereabouts at spring break, she concocted a story that Roberts gave her marihuana and sexually assaulted her. The State's argument was clearly in response to this argument, but must be supported by the evidence in order to be proper.

We conclude that the court did not err by declining to exclude the State's argument. Easley, her mother, and Kathleen Gubitz, Easley's school counselor, testified that Easley and Gubitz had a close relationship; Easley described Gubitz as a friend in whom she could confide. Easley and Gubitz both testified that they talked just after spring break. Easley testified that after spring break she told Gubitz about Roberts's sexual advances on her; Easley testified that Gubitz was the first person she told about the sexual advances. When the prosecutor asked, "Jessica, what made you want to tell Ms. Gubitz about what was going on?" she responded, "I was tired of it. I didn't want it to happen anymore."[2] Gubitz testified that, after her post-spring break conversation with Easley, she contacted various authorities including Sergeant Bob Taggart of the Leander Police Department. Easley's mother said she learned of Easley's marihuana use, not from Easley herself, but from Taggart. There is no evidence that Taggart learned of Easley's marihuana use or Roberts's provision of marihuana any other way than by this chain of events. This evidence either directly or inferentially supports the State's assertion that "[a]fter spring break she went to her friend, who she trusted, and disclosed that she and Calvin had been smoking marijuana, had been drinking, and the sexual acts that occurred to her over spring break." The argument also responded to Roberts's assertion that the girls were lying because they got caught. There is no evidence that Easley's confessions to her counselor were triggered by being caught with marihuana or being out of place at spring break. The court did not err by overrul-

---

**2.** Though her testimony is not entirely clear of what "it" Easley had tired, "it" could include marihuana provision. The fact that Easley's mother learned from the police who learned from the counselor about Easley's drug use enhances the possibility that "it" did. Regardless, there was no objection to any vagueness in this testimony nor was vagueness the basis of the objection to the argument.

ing his objection to this argument by the State. We overrule point three.

## CONCLUSION

Legally and factually sufficient evidence supports Roberts's conviction for delivering marihuana to Easley on or about March 1, 1998. The court did not err in allowing the challenged portion of the State's argument. Having overruled all three points of error, we affirm the conviction.