# IMPORTANT NOTICE
## NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED."
PURSUANT TO THE RULES OF CIVIL PROCEDURE
PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C),
THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE
CITED OR USED AS BINDING PRECEDENT IN ANY OTHER
CASE IN ANY COURT OF THIS STATE; HOWEVER,
UNPUBLISHED KENTUCKY APPELLATE DECISIONS,
RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR
CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED
OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE
BEFORE THE COURT.  OPINIONS CITED FOR CONSIDERATION
BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED
DECISION IN THE FILED DOCUMENT AND A COPY OF THE
ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE
DOCUMENT TO THE COURT AND ALL PARTIES TO THE
ACTION.

RENDERED: DECEMBER 16, 2021
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

2020-SC-0218-WC

RAY HENRY PICKETT                                           APPELLANT

|  |  |
|---|---|
| V. | ON APPEAL FROM COURT OF APPEALS<br>NOS. 2018-CA-0415 & 2018-CA-0551<br>WORKERS' COMPENSATION BOARD<br>NO. WC-15-01910 |

FORD MOTOR COMPANY (LAP);                              APPELLEES
COMMONWEALTH OF KENTUCKY, EX REL.
DANIEL CAMERON, ATTORNEY GENERAL;
HONORABLE. R. ROLAND CASE,
ADMINISTRATIVE LAW JUDGE; AND
WORKERS' COMPENSATION BOARD

**MEMORANDUM OPINION OF THE COURT**

**<u>AFFIRMING</u>**

## I. BACKGROUND

Ray Pickett began working on the assembly line for Ford Motor Company in 2012. Pickett claimed the repetitive nature of his job caused him to become occupationally disabled, which condition required a cervical fusion. After returning to work from the neck surgery, Pickett asserts he sustained a second work-related injury, this one to his left shoulder, when another employee lowered the back hatch of a vehicle onto it.

The Administrative Law Judge (ALJ) found the neck injury preexisted Pickett's employment at Ford but found the shoulder injury compensable and awarded temporary total disability benefits and permanent partial disability benefits in his July 2017 order. The ALJ limited the award to the version of KRS 342.730(4) enacted in 1996, terminating Pickett's benefits when he qualified for normal old-age Social Security benefits. Both parties filed motions for reconsideration, which the ALJ overruled, noting this Court's opinion in *Parker v. Webster Cnty. Coal, LLC (Dotiki Mine)*, 529 S.W.3d 759 (Ky. 2017) had yet to reach finality. In *Parker*, a majority of this Court held the 1996 version of KRS 342.730 was unconstitutional.

Pickett and Ford both appealed to the Workers' Compensation Board. By the time the Board considered the appeal, the *Parker* opinion had become final. The Board vacated the ALJ's opinion and order and remanded the matter, directing the ALJ to apply the "tier down" provisions of the 1994 version of KRS 342.730(4). Both parties then appealed to the Court of Appeals, which vacated and remanded Pickett's claim to the ALJ, directing him to apply the current version of KRS 342.730(4) pursuant to this Court's opinion in *Holcim v. Swinford*, 581 S.W.3d 37 (Ky. 2019), which held the 2018 amendment to KRS 342.730(4) was retroactive.

Pickett now appeals to this Court, arguing the retroactive application of KRS 342.730(4) is unconstitutional, violating his rights to due process and equal protection pursuant to the Fourteenth Amendment of the United States Constitution and Sections 1, 2, and 3 of the Kentucky Constitution. Pickett

2

also contends the statute amounts to the state exercising absolute and arbitrary power. Finally, he claims the fact that only certain statutes in the House Bill containing the amendment to KRS 342.730(4) were deemed retroactive amounts to "special legislation" in violation of Sections 59 and 60 of the Kentucky Constitution.

## II. ANALYSIS

KRS 342.730(4) concerns the termination of workers' compensation benefits. In *Parker,* 529 S.W.3d 759, this Court found the then-current 1996 version of KRS 342.730(4) unconstitutional on equal protection grounds. The 1996 version of the statute tied the termination of workers' compensation benefits to the time at which the employee qualified for old-age Social Security benefits. This Court held this was an arbitrary distinction with no rational relation to a legitimate state interest.

In *Holcim,* 581 S.W.3d at 41, this Court considered whether a 2018 version of KRS 342.730(4) could be applied retroactively. Quoting a Legislative Research Commission comment beneath the statute, we held in *Holcim* that the amendment "applies to those cases which 'have not been fully and finally adjudicated, or are in the appellate process, or for which time to file an appeal [h]as not lapsed, as of the effective date of this Act.'" *Id.* at 44.

Whereas the pre-*Parker* version of KRS 342.730(4) linked workers' compensation benefit termination to the time at which the worker qualified for old-age Social Security benefits (and thereby violated an individual's right to equal protection under the law by arbitrarily treating similarly-situated

3

individuals differently), the 2018 version of the statutory subsection links the termination of benefits to the injured employee attaining a particular age. Under the amendment, a claimant's benefits terminate on his or her seventieth birthday or four years after his or her work injury or exposure, whichever occurs later. Pickett argues this statute is constitutionally infirm on multiple grounds.

### A. Equal Protection

Pickett argues the amendment to KRS 342.730(4) violates his rights to equal protection under the law, as guaranteed by the United States and Kentucky Constitutions. The basis for his argument is that the amendment treats older injured workers and younger injured workers differently.

The 14th Amendment of the United States Constitution and Sections 1, 2, and 3 of the Kentucky Constitution contain the respective federal and state equal protection clauses. Their "goal . . . is to 'keep[ ] governmental decision makers from treating differently persons who are in all relevant respects alike.'" *Vision Mining, Inc. v. Gardner*, 364 S.W.3d 455, 465 (Ky. 2011) (quoting *Nordlinger v. Hahn,* 505 U.S. 1, 10 (1992)). Because "[w]orkers' compensation statutes concern matters of social and economic policy," if a rational basis or substantial and justifiable reason supports the classifications they create, we must uphold it. *Id.* at 466 (citing *Cain v. Lodestar Energy, Inc.,* 302 S.W.3d 39, 42 (Ky. 2009)). "In sum, we will uphold the age limitation here so long as it rationally relates to a legitimate state objective." *Cates v. Kroger*, 627 S.W.3d 864, 871 (Ky. 2021).

4

As this Court has stated, "acts of the legislature carry a strong presumption of constitutionality." *Wynn v. Ibold, Inc.*, 969 S.W.2d 695, 696 (Ky. 1998). "Doubts regarding constitutionality must be resolved in favor of upholding the law." *Cates*, 627 S.W.3d at 870. Furthermore, "the principle of reducing workers' compensation benefits at an age when workers typically become eligible for alternative forms of income replacement is not new to Kentucky." *Wynn*, 969 S.W.2d at 696.

We took up the constitutionality of the 2018 amendment to KRS 342.730(4) in *Cates*, 627 S.W.3d at 871, holding, "the current version of KRS 342.730(4) is not violative of the Equal Protection Clause because the age classification is rationally related to a legitimate state purpose." We do not depart from that recent holding today.

As this Court held in *Parker*, "[t]he rational bases for treating younger and older workers differently [are]: (1) it prevents duplication of benefits; and (2) it results in savings for the workers' compensation system." 529 S.W.3d at 768. Four years later, we stated, "we remain convinced that preventing a duplication of wage-loss protection programs and promoting the solvency of the workers' compensation system are legitimate state interests." *Cates*, 627 S.W.3d at 870. We are unpersuaded to deviate from this position by Pickett's arguments that KRS 342.730(4) does not prevent duplicative income replacement benefits, avoid duplicative governmental benefits, or provide a savings for the workers' compensation system; nor are we convinced that savings to the workers' compensation system is not a valid basis to uphold a

statute in the face of an equal protection argument. Again, today, we hold the statute passes the rational basis test as it "treats alike all those who receive workers' compensation benefits." *Id.* at 871.

Pickett argues that even if the statutory amendment were constitutional on equal protection grounds (as we have held), it is unconstitutional to apply the statute retroactively to his claim, as his injury occurred before the effective date of the amendment. However, "[t]he legislature 'may amend the law and make the change applicable to pending cases, even when the amendment is outcome determinative.'" *Id.* (quoting *Bank Markazi v. Peterson*, 578 U.S. 212 (2016)). Here, this Court declared one version of the statutory subsection unconstitutional and the legislature passed a new subsection, providing for retroactive effect—and the legislature was within constitutional bounds in so doing.

### B. Due Process

Pickett next contends the retroactive application of KRS 342.730(4) stripped him of his property right to workers' compensation benefits in violation of his due process rights, as he did not receive prior notice or a hearing. We addressed this issue in *Cates*, holding the claimants had no vested right in the duration and amount of their benefits "until they have received a final judgment in their favor." *Cates*, 627 S.W.3d at 873. The same is true here. Because Pickett had no vested right in the duration of his benefits, a statute terminating them at a specific age did not deny him due process.

### C. Absolute and Arbitrary Power

Pickett also asserts KRS 342.730(4) amounts to an exercise of absolute and arbitrary power in conflict with his rights pursuant to Sections 1, 2, and 3 of Kentucky's Constitution. Specifically, Section 2 of the Kentucky Constitution, reads, "[a]bsolute and arbitrary power over the lives, liberty and property of freemen exists nowhere in a republic, not even in the largest majority." Courts in this Commonwealth have recognized for half a century that when a "legislative body acts in a purported policy-making or law-making function . . . the concept of what is 'arbitrary' is much more narrowly constricted . . . ." *City of Louisville v. McDonald*, 470 S.W.2d 173, 178 (Ky. 1971). Such an action is only "arbitrary if there is no rational connection between that action and the purpose for which the body's power to act exists. Where the existence of such rational connection is 'fairly debatable' the action will not be disturbed by a court." *Id.*

This Court has "consistently held that treating older injured workers differently from younger injured workers is rationally related to the legitimate government interests in preventing a duplication of benefits and saving money for the workers' compensation system." *Cates*, 627 S.W.3d at 869. KRS 342.730(4) does not amount to an arbitrary exercise of power.

### D. Special Legislation

Finally, Pickett argues KRS 342.730(4) violates Kentucky's constitutional provisions regarding special legislation found in Sections 59 and 60, as only

7

certain statutes amended in House Bill 2 containing the legislation were made retroactive. Section 59 of the Kentucky Constitution states, in pertinent part:

> The General Assembly shall not pass local or special acts concerning any of the following subjects, or for any of the following purposes, namely:
>
> . . . .
>
> Fifth: To regulate the limitation of civil or criminal causes.
>
> . . . .
>
> Twenty-fourth: To regulate labor, trade, mining or manufacturing. . . .

Pickett links this argument to his equal protection argument—essentially arguing the legislation's retroactivity is arbitrary. He also makes the argument that older injured workers are discriminated against because if they receive permanent partial disability benefits, they will not receive the entirety of their awards unlike younger injured workers. This is another attempt at making the same argument under a different veil. We reject it, too, as *all* injured workers' benefits terminate at age seventy under the amendment.

This Court addressed a similar special legislation argument in *Cates*, 627 S.W.3d at 872, holding the amended statutory subsection was not special legislation as it did not apply "to a particular individual, object or locale." (Citing *Calloway Cnty. Sheriff's Dep't v. Woodall*, 607 S.W.3d 557, 573 (Ky. 2020)). We held in *Cates*, "[t]he argument that the statute differentiates between older and younger workers is a *classification* argument, which is properly considered under sections 1, 2, and 3 of the Kentucky Constitution."

8

*Id.* And, just as in *Cates*, we reiterate: "KRS 342.730(4) is simply not special legislation." *Id.*

### III. CONCLUSION

For the foregoing reasons, we affirm the Court of Appeals and remand to the ALJ for further proceedings consistent with this opinion.

All sitting. All concur.

COUNSEL FOR APPELLANT:

Ched Jennings
Jennings Law Offices


COUNSEL FOR APPELLEE, FORD MOTOR COMPANY (LAP):

George T. T. Kitchen, III
Sewell & Neal, PLLC


COUNSEL FOR APPELLEE, COMMONWEALTH OF KENTUCKY, EX REL.
DANIEL CAMERON, ATTORNEY GENERAL:

Matthew F. Kuhn
Brett R. Nolan
Alexander Y. Magera

ADMINISTRATIVE LAW JUDGE:

Hon. R. Roland Case


WORKERS' COMPENSATION BOARD:

Michael W. Alvey
Chairman