RENDERED: FEBRUARY 12, 2021; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2019-CA-1852-WC

O'REILLY AUTOMOTIVE
STORES, INC.                                                    APPELLANT

PETITION FOR A REVIEW OF A DECISION
v.            OF THE WORKERS' COMPENSATION BOARD
ACTION NO. WC-14-89885

TONY ERNSPIKER; HONORABLE
STEPHANIE L. KINNEY,
ADMINISTRATIVE LAW JUDGE; AND
WORKERS' COMPENSATION BOARD                         APPELLEES

AND
NO. 2020-CA-0035-WC

TONY ERNSPIKER                                        CROSS-APPELLANT

CROSS-PETITION FOR A REVIEW OF A DECISION
v.            OF THE WORKERS' COMPENSATION BOARD
ACTION NO. WC-14-89885

O'REILLY AUTOMOTIVE STORES, INC.;
HONORABLE STEPHANIE L. KINNEY,
ADMINISTRATIVE LAW JUDGE;
WORKERS' COMPENSATION BOARD;
AND DANIEL CAMERON, KENTUCKY
ATTORNEY GENERAL                                    CROSS-APPELLEES


OPINION
AFFIRMING

** ** ** ** **

BEFORE:  MAZE, TAYLOR, AND K. THOMPSON, JUDGES.

TAYLOR, JUDGE:  O'Reilly Automotive Stores, Inc., brings Appeal No. 2019-CA-1852-WC and Tony Ernspiker brings Cross-Appeal No. 2020-CA-0035-WC from a November 18, 2019, Opinion of the Workers' Compensation Board (Board) that affirmed in part, vacated in part, and remanded an April 26, 2019, Opinion, Award and Order of the Administrative Law Judge (ALJ).  We affirm Appeal No. 2019-CA-1852-WC and Cross-Appeal No. 2020-CA-0035-WC.

Ernspiker suffered two separate and distinct injuries while employed by O'Reilly.  On September 5, 2013, Ernspiker injured his right shoulder and right wrist while attempting to prevent rotors from falling to the floor.  Subsequently, on September 1, 2015, Ernspiker injured his left shoulder when picking up a battery.

Ernspiker filed claims for workers' compensation benefits based upon the September 5, 2013, right shoulder and right wrist injury and the September 1, 2015, left shoulder injury.  As to the right shoulder and wrist injuries, O'Reilly

-2-

accepted each as compensable, and Ernspiker underwent right rotator cuff repair surgery and right carpal tunnel release surgery. Both surgeries were paid for by the workers' compensation carrier. Following these surgeries, Ernspiker developed right cubital tunnel syndrome, and O'Reilly contested the work-relatedness of the right cubital tunnel syndrome. Nonetheless, Ernspiker underwent cubital tunnel release surgery.

As to the left shoulder injury, O'Reilly accepted the injury as compensable, and Ernspiker underwent left rotator cuff repair surgery. This surgery was paid for by the workers' compensation carrier. Following the surgery, Ernspiker's left rotator cuff developed a tear, and he needed another surgery. O'Reilly claimed the new tear was caused by Ernspiker's failure to follow the surgeon's order and wear an arm brace to a concert. O'Reilly maintained that Ernspiker attended a concert without the arm brace and caught a woman who was about to fall, causing the new tear. Conversely, Ernspiker stated that his shoulder suddenly worsened after feeling a pop during a physical therapy session. Ernspiker believed the new tear occurred at the physical therapy session.

In an October 2017, Interlocutory Opinion, Award and Order, the ALJ found that the second left rotator cuff tear was a compensable work-related injury:

> The parties do not dispute the occurrence of a work injury to [Ernspiker's] left shoulder on September 1, 2015. [O'Reilly] accepted this injury as compensable and paid for medical benefits, including a left shoulder

surgery, as well as temporary total disability benefits. The primary dispute is whether Dr. [Mark] Smith's proposed surgery to treat [Ernspiker's] recurrent left shoulder rotator cuff tear is related to [Ernspiker's] work injury of an intervening injury. [O'Reilly] also asserts [Ernspiker's] failure to follow medical advice (i.e. his failure to wear a left should sling) was a contributing factor, which caused [Ernspiker's] recurrent left rotator cuff tear. After a careful review of the evidence, this ALJ finds [Ernspiker's] current left shoulder condition is due to the September 1, 2015[,] work injury. In making this finding, the ALJ relies on Dr. Smith's treatment notes and the opinions of Dr. [Warren] Bilkey.

On February 6, 2016, Dr. Smith performed an arthroscopic rotator cuff repair of a large tear, subacromial decompression, extensive labral debridement, and biceps tenotomy. This ALJ notes [Ernspiker's] left shoulder rotator cuff tear was characterized as large. In other words, [Ernspiker] sustained a significant left shoulder rotator cuff tear as a direct result of the September 1, 2015[,] injury. On February 29, 2016, [Ernspiker] followed up with Dr. Smith, who noted "Status sling until follow up." [O'Reilly] argues [Ernspiker's] failure to wear his sling in March [while] attending a concert constitutes a failure to follow medical advice or medical non-compliance. [Ernspiker] testified he believed he was utilizing his sling as directed and it was his understanding he was only to wear the sling during periods he was not sedentary. [Ernspiker] was attending a concert in March, wherein he thought he would be seated and would not require the use of his left shoulder sling. This ALJ has closely reviewed Dr. Smith's treatment records, and there is no clear indication [Ernspiker] was advised to wear his sling continuously, without interruption, prior to March 28, 2016. Dr. Smith's treatment note of March 28, 2016[,] specifically indicates Dr. Smith did not want [Ernspiker] out of his sling at all prior to that point in time.

[Ernspiker] was allowed to come out of the sling on March 28, 2016.

Dr. Smith was actively treating [Ernspiker] during the period the incident at the concert occurred and Dr. Smith documents the physical therapy incident multiple times in his treatment records. [O'Reilly] has poignantly pointed out there is no notation of an incident contained in [Ernspiker's] physical therapy records. Regardless, on June 22, 2016[,] and July 7, 2016, Dr. Smith noted an incident wherein [Ernspiker] reported a left shoulder pop and onset of pain while performing strengthening exercises during physical therapy. Thus, based upon [Ernspiker's] testimony and Dr. Smith's treatment notes, this ALJ finds [Ernspiker] endured a left shoulder pop with an onset of increased left shoulder pain during physical therapy.

This ALJ is placed in the difficult position of assessing whether the incident at the concert in March 2016 or the incident at physical therapy which occurred sometime before June 22, 2016[,] caused [Ernspiker's] recurrent left shoulder rotator cuff tear, which requires additional surgical intervention. Again, this ALJ was impressed with the opinions of Dr. Smith, as he rendered treatment to [Ernspiker] throughout the period during which these incidents occurred. It is certain the concert incident happened in March 2016; however, [Ernspiker's] postoperative care was not drastically altered as a result of this incident. On March 28, 2016, Dr. Smith elected to proceed with normal rehabilitation protocol. Dr. Smith <u>questioned</u> whether [Ernspiker] may have re-injured his left shoulder during the concert in his treatment note of May 23, 2016; however, Dr. Smith later opined [Ernspiker's] recurrent left shoulder rotator cuff tear was due to the incident at physical therapy. Certainly, Dr. Smith did not recommend [Ernspiker] undergo a left shoulder MRI until after documenting the physical therapy incident twice in his treatment records and [Ernspiker's] continued reports of increased pain

-5-

thereafter. This ALJ relied on the opinion of Dr. Smith, and to a lesser extent Dr. Bilkey, in finding [Ernspiker's] recurrent left shoulder rotator cuff tear occurred during the physical therapy incident. As such, this ALJ further finds that Dr. Smith's proposed left shoulder surgery is related to the September 1, 2015[,] left should work injury.

October 16, 2017, Interlocutory Opinion, Award and Order at 10-12. And, by an April 26, 2019, Opinion, Award and Order, the ALJ found Ernspiker's cubital tunnel syndrome in the right arm was also a compensable work-related injury:

> This ALJ notes Dr. [Thomas] Gabriel treated [Ernspiker] for his right upper extremity carpal tunnel and cubital tunnel syndromes. . . .
>
> [Ernspiker] reported ulnar nerve irritation with numbness/tingling in the right ring finger on July 1, 2014. An EMG [electromyography] was conducted on August 18, 2014, which was consistent with significant right cubital tunnel syndrome. However, [Ernspiker's] prior January 23, 2014[,] EMG showed bilateral velocity delays of [Ernspiker's] ulnar sensory nerves, which was possibly consistent with early peripheral polyneuropathic changes. Dr. Gabriel concluded there was definite evidence of progressive and severe ulnar nerve compression at the elbow during the perioperative period following [Ernspiker's] right shoulder rotator cuff repair on March 4, 2014, and right carpel tunnel release on April 24, 2014. Dr. Gabriel opined [Ernspiker's] initial injury and subsequent surgeries for the right upper extremity were the proximate cause of [Ernspiker's] symptomatic cubital tunnel syndrome. Dr. Gabriel explained the initial injury on September 5, 2013[,] fully hyperextended [Ernspiker's] right arm at the shoulder, elbow and wrist. This ALJ is impressed with Dr. Gabriel's narrative report and notes Dr. Gabriel is in the best position to address causation on the issue of

-6-

[Ernspiker's] ulnar nerve condition due to his position as [Ernspiker's] treating physician from 2014 through 2016. As such, this ALJ adopts Dr. Gabriel's causation opinion regarding [Ernspiker's] ulnar nerve condition.

April 26, 2019, Opinion, Award and Order at 12. The ALJ assessed a 6 percent whole person permanent impairment as a result of the right shoulder injury, a 12 percent whole person impairment as a result of the cubital tunnel syndrome, and a 22 percent whole person permanent impairment as a result of the left shoulder injury.

Both O'Reilly and Ernspiker sought review with the Board. By opinion rendered November 18, 2019, the Board affirmed in part, vacated in part, and remanded. The Board vacated the ALJ's calculation of the amount of Ernspiker's weekly permanent partial disability benefit.[1] Upon all other issues, the Board affirmed the ALJ's decision.

O'Reilly brings Appeal No. 2019-CA-1852-WC and Ernspiker brings Cross-Appeal No. 2020-CA-0035-WC from the November 18, 2019, opinion of the Board. We shall address each appeal *seriatim.*

APPEAL NO. 2019-CA-1852-WC

Upon review of the Board's opinion, our role is limited to whether "the Board has overlooked or misconstrued controlling statutes or precedent, or

---

[1] O'Reilly Automotive Stores, Inc., and Tony Ernspiker agreed that the calculation of the weekly permanent partial disability benefits was erroneous.

committed an error in assessing the evidence so flagrant as to cause gross injustice." *W. Baptist Hospital v. Kelly*, 827 S.W.2d 685, 687-88 (Ky. 1992). In so doing, we must necessarily review the opinion of the ALJ. When a claimant is successful before the ALJ, the relevant inquiry is whether the ALJ's opinion is supported by substantial evidence. *Wolf Creek Collieries v. Crum*, 673 S.W.2d 735, 736 (Ky. App. 1984). And, the ALJ, as fact-finder, possesses the sole authority to determine the credibility of testimony and the weight of evidence. *Miller v. E. Ky. Beverage/Pepsico, Inc.*, 951 S.W.2d 329, 331 (Ky. 1997). Our review proceeds accordingly.

O'Reilly contends that the ALJ erred by finding Ernspiker's second rotator cuff tear in his left shoulder was work related and compensable. In particular, O'Reilly claims that Ernspiker's second rotator cuff tear was clearly caused by Ernspiker's failure to wear his arm brace as ordered by his physician:

> The objective medical evidence demonstrates that Mr. Ernspiker's condition began to deteriorate after the incident at the Gladys Knight concert. Post-surgery, Mr. Ernspiker was told that he must wear his left arm brace at all times, unless he is completely sedentary or icing his shoulder. Mr. Ernspiker appeared to have a positive outcome from his surgery. Physical therapy notes indicated that he was getting stronger and that pain was reducing. However, Mr. Ernspiker's physical condition began to deteriorate following an incident at the concert.
>
> The simple fact is that all of the medical records support a deterioration of Mr. Ernspiker's condition following the incident at the concert. . . .

O'Reilly's Brief at 14.

The record reveals that there was conflicting evidence as to the cause of the second rotator cuff tear. Ernspiker testified that his left shoulder suddenly worsened after feeling a pop during a physical therapy session. Dr. Steven Smith was aware of the concert incident and of the physical therapy incident. Dr. Smith opined that the second rotator cuff tear was caused by the physical therapy incident. As fact-finder, the ALJ viewed Dr. Smith's testimony as credible and relied upon same. Considering the testimony of Dr. Smith and of Ernspiker, we conclude that substantial evidence existed to support the ALJ's finding that the second rotator cuff tear to the left shoulder was work related and compensable.

O'Reilly next asserts that the ALJ erred by finding Ernspiker's right cubital tunnel syndrome was work related and compensable. O'Reilly points to medical notes made by Dr. Thomas Gabriel, Ernspiker's treating physician. O'Reilly points out that Dr. Gabriel stated that "*the etiology of the new cubital tunnel symptoms remains unclear, as neither the carpal tunnel release at the wrist or the rotator cuff surgery at the shoulder would have any direct effect on the ulnar nerve at the elbow*." O'Reilly's Brief at 18. O'Reilly also cites to Dr. Gabriel's opinion that the cubital tunnel symptoms may have been caused by diabetes.

However, O'Reilly fails to recognize Dr. Gabriel's later comprehensive narrative report dated October 30, 2018, which the ALJ found to be

most persuasive. Therein, Dr. Gabriel opined that the right cubital tunnel syndrome was caused by the initial injury and subsequent surgeries. In finding the right cubital tunnel syndrome was work related, the ALJ relied upon Dr. Gabriel's opinion as expressed in the October 30, 2018, comprehensive narrative report. Considering this report, we are of the opinion that substantial evidence supported the ALJ's finding that the right cubital tunnel syndrome was work related and compensable.

O'Reilly also argues that the ALJ erroneously awarded temporary total disability (TTD) benefits from February 16, 2016, through June 1, 2018, for the September 1, 2016, left shoulder injury. O'Reilly relies upon the opinion of Dr. Ronald Burgess, who believed that Ernspiker reached maximum medical improvement on December 5, 2017. As to this contention of error, we agree with the Board's reasoning:

> O'Reilly also argues the ALJ erred in awarding TTD benefits for the 2015 injury from February 16, 2016[,] through June 1, 2018. O'Reilly notes Dr. Burgess placed Ernspiker at MMI [maximum medical improvement] from the September 12, 2017[,] rotator cuff surgery on December 5, 2017. Again, O'Reilly's argument is predicated on its position that only the first rotator cuff surgery is related to the work injury. Because the ALJ found the second left rotator cuff surgery and left shoulder replacement are related to the September 1, 2015[,] injury, the ALJ could find Ernspiker is entitled to TTD benefits until he reached MMI on June 1, 2018.

-10-

November 18, 2019, Board's Opinion at 16-17. We have previously concluded that substantial evidence supports the ALJ's finding that the second rotator cuff tear in the left shoulder was work related and compensable. Consistent therewith, the ALJ properly awarded TTD benefits until June 1, 2018.

O'Reilly further maintains that the ALJ's impairment ratings and PPD benefits were erroneous. In particular, O'Reilly claims:

> The only award the ALJ can reasonably grant in this claim are benefits based on the 2% impairment rating with a 3.2 multiplier for the September 1, 2015[,] injury. Mr. Ernspiker achieved MMI for the compensable left shoulder rotator cuff repair on December 5, 2017[,] and was assigned a 2% impairment rating by Dr. Burgess.
>
> The ALJ also committed a patent error in finding that "based on Dr. Gabriel's work restrictions alone" that Mr. Ernspiker does not retain the physical capacity to return to work for the right shoulder. Dr. Gabriel was the one that released him to full duty work. Ironically, the date he was released to full duty for the initial injury was the **same day** that [Ernspiker] alleges the "new" ulnar nerve symptoms which he had not mentioned before. Since Dr. Gabriel released [Ernspiker] to full duty work, then he complained of "new" symptoms which he later said were related to an unrelated fall or at best "unclear" one cannot assert that [Ernspiker] cannot return to work based on Dr. Gabriel's restrictions which were based on an unrelated change of condition.

O'Reilly's Brief at 19.

O'Reilly essentially argues that Ernspiker's impairment ratings should be assigned for the left shoulder following the first rotator cuff surgery and for the

right shoulder without considering the ulnar nerve syndrome. As hereinbefore stated, we believe substantial evidence supported the ALJ's findings as to work relatedness of the second rotator cuff tear in the left shoulder and of the ulnar nerve syndrome. We, thus, view this argument to be without merit.

CROSS-APPEAL NO. 2020-CA-0035-WC

Ernspiker contends that the ALJ erred by determining that his award of PPD benefits was subject to the amended version of Kentucky Revised Statutes (KRS) 342.730(4).[2] Ernspiker points out that KRS 342.730(4) was amended during pendency of his claims and that the amended KRS 342.730(4) should not be retroactively applied to his claims.

In *Holcim v. Swinford*, 581 S.W.3d 37, 44 (Ky. 2019), the Supreme Court held that the amended version of KRS 342.730(4) does apply retroactively to pending claims. In accordance with the holding of *Holcim*, 581 S.W.3d 37, KRS 342.730(4) has retroactive application to all pending claims.

Ernspiker next asserts that the retroactive application of KRS 342.730(4) violates the contract clause of Article 1, Section 10 of the United States Constitution and of Section 19 of the Kentucky Constitution. Ernspiker also

---

[2] Kentucky Revised Statutes (KRS) 342.730(4) was amended by the General Assembly on July 14, 2018.

maintains that it is unconstitutionally arbitrary to retroactively apply KRS 342.730(4).[3] We disagree.

The retroactive application of KRS 342.730(4) is not arbitrary and is not violative of the contract clause. Our Supreme Court has recognized that limiting the duration of income benefits serves a legitimate public purpose - it prevents duplication of benefits (a worker from receiving both income benefits and social security benefits) and results in a significant savings to the workers' compensation system. *Parker v. Webster County Coal, LLC (Dotiki Mine)*, 529 S.W.3d 759, 763 (Ky. 2017). Relying upon the reasoning in *Parker*, 529 S.W.3d at 763, the retroactive application of KRS 342.730(4) is rationally related to legitimate government interests and is not arbitrary. *See Bolin v. T&T Mining*, 231 S.W.3d 130, 133 (Ky. 2007) (citing *Mullins v. Manning Coal Corporation*, 938 S.W.2d 260 (Ky. 1997).

Although the retroactive application of the amended KRS 342.730(4) may operate as an impairment of a contractual relationship, it is clear that the amended KRS 342.730(4) is intended to address a legitimate government purpose. *Maze v. Bd. Dirs. for Commonwealth Postsecondary Educ.*, 559 S.W.3d 354, 368-69 (Ky. 2018). When the state is not a party to the contract (as in this case), the

---

[3] Neither the Administrative Law Judge nor the Workers' Compensation Board possess the authority to determine the constitutionality of a statute. *Scott v. AEP Kentucky Coals, LLC*, 196 S.W.3d 24, 26 (Ky. App. 2006).

court should "defer to legislative judgment as to the necessity and reasonableness of a particular measure." *Maze*, 559 S.W.3d at 372 (citation omitted). Thus, we cannot conclude that retroactive application of KRS 342.730(4) violates the contract clause set forth in the Section 19 of the Kentucky Constitution or in Article 1, Section 10 of the United States Constitution.

For the foregoing reasons, the opinion of the Workers' Compensation Board is affirmed in Appeal No. 2019-CA-1852-WC and Cross-Appeal No. 2020-CA-0035-WC.

ALL CONCUR.

BRIEFS FOR APPELLANT/CROSS-APPELLEE O'REILLY AUTOMOTIVE STORES, INC.:

Mark R. Bush
Samantha Steelman
Clarke D. Cotton
Fort Mitchell, Kentucky

BRIEF FOR APPELLEE/CROSS-APPELLANT TONY ERNSPIKER:

Wayne C. Daub
Louisville, Kentucky