RENDERED: MARCH 25, 2021
TO BE PUBLISHED

# Supreme Court of Kentucky

2019-SC-0399-D

KAREN C. BRITT                                            APPELLANT

ON REVIEW FROM COURT OF APPEALS
NO. 2016-CA-1036
V.                 FRANKLIN CIRCUIT COURT NO. 12-CI-00123

UNIVERSITY OF LOUISVILLE                      APPELLEES

AND

SHIRLEY C. WILLIHINGANZ

**OPINION OF THE COURT BY JUSTICE LAMBERT**

**AFFIRMING**

Under KRS[1] 45A.260, an action on a contract with the Commonwealth generally must be commenced within one year from the date of completion specified in the contract. In this case, while we conclude that the Court of Appeals erred in its determination that Karen Britt, former professor at the University of Louisville, had a written contract with the University, we nonetheless hold that Britt brought her action outside of the one-year period following the date of completion of her last written contract. We therefore affirm the Court of Appeals, albeit on different grounds, and reverse the Franklin Circuit Court

---

[1] Kentucky Revised Statutes.

# I. FACTUAL BACKGROUND

In the fall of 2003, James Brennan, Dean of the College of Arts and Sciences at the University of Louisville ("the University") sent a letter to Appellant, Dr. Karen Britt, then a visiting assistant professor of Art History, stating his intent to recommend her for appointment to a full-time, tenure-track position. The letter set out the terms and conditions of the position, including the duration of the appointment and first year's salary. With regard to tenure, the recommendation provided the conditions under which Dr. Britt would be eligible for tenure should she remain employed at the University. The letter further stated other terms and conditions applicable to the appointment, such as the policies governing personnel reviews and termination, were set out in the University's governance document, The *Redbook*, and other relevant college-level policy statements. Acceptance of the recommendation was made effective upon receipt of the return of the letter with the employee's signature in the designated space. Dr. Britt signed the letter on October 27, 2003, and upon the Provost and Board of Trustees' approval of the appointment, began working as an Assistant Professor of Art History.

The University renewed Dr. Britt's appointment each year until the academic year 2009-2010. Between 2006 and 2009, the University's Executive Vice President and Provost, Shirley Willihinganz, sent Dr. Britt a letter each summer informing Dr. Britt that her appointment as Assistant Professor was continued through the upcoming academic year. With the exception of the relevant dates, each of the four appointment letters is substantially identical.

The letters provide that "[t]he terms and conditions of employment in the University of Louisville herein specified include all rules and regulations promulgated on the authority of the University of Louisville Board of Trustees and the governance document known as The *Redbook*." Regarding tenure, each letter states "[t]he appointment...is subject to the tenure policy of the University of Louisville. Under the policy of The *Redbook*, tenure in this position would be awarded July 1, 2011 should it be mutually agreeable to make renewals of this appointment beyond this date." Each letter requested Dr. Britt sign and return the letter, which she did each year.

Dr. Britt applied for tenure in October 2009. Following the review process, Dr. Britt's application was rejected. The Dean of the College of Arts and Sciences recommended that Dr. Britt's tenure application be denied because she failed to demonstrate proficiency in her research. Following a leave of absence in the fall of 2010, Dr. Britt returned to teach for the spring semester of 2011, after which her employment at the University ended.

Dr. Britt filed suit against the University in January 2012. Dr. Britt alleged, inter alia, that the University breached its employment contract with her when it violated provisions of its policy manuals and failed to provide her with adequate time to perform the research necessary for her to obtain tenure. Dr. Britt requested specific performance of her contract and money damages.

The University moved for summary judgment. As relevant here, the University asserted that governmental immunity shielded it from liability because Dr. Britt's appointment letters did not constitute written contracts

sufficient to waive immunity under the Kentucky Model Procurement Code (KMPC), KRS 45A.245.  The University further argued that even if the letters constituted contracts, those contracts did not incorporate the University's personnel policies as contractual promises.  Finally, the University claimed that Dr. Britt filed her suit outside of the one-year limitations period set by KRS 45A.260.

After multiple hearings, the Franklin Circuit Court denied the University's motion for summary judgment.  The court first concluded that the recommendation letter and subsequent appointment letters constituted express written contracts sufficient to waive the University's immunity.  The court then determined that the letters incorporated by reference The *Redbook* and the specified University policies.  Regarding the statute of limitations, the court concluded that, even though the suit was filed more than one year after the end date of the last written contract, the suit was still timely because Dr. Britt continued to perform under contract while challenging the denial of her tenure in 2011.

The Court of Appeals reversed the circuit court's denial of summary judgment, holding that the University was shielded from liability due to governmental immunity.  The court offered two independent bases for its decision.  First, the court held that the language of the various appointment letters failed to clearly demonstrate the parties' intent that The *Redbook* or personnel policies be incorporated into the agreement.  Under this theory, the court reasoned that The *Redbook* might constitute an implied contract, but

KRS 45A.245 only applies to written agreements. In the alternative, the court concluded Dr. Britt's breach of contract claim was legally insufficient because any purported agreement that she had did not guarantee her tenure and, as a result, failed to provide a basis upon which relief could be granted.

## II. ANALYSIS

### A. Standard of Review

An order denying a claim of governmental immunity is immediately appealable despite the lack of a final judgment.[2] "The issue of whether a defendant is entitled to the defense of sovereign or governmental immunity is a question of law."[3] Similarly, issues regarding the formation and construction of a contract are questions of law.[4] Accordingly, our review on appeal is de novo.[5]

### B. KRS 45A

The University of Louisville, as a state university of the Commonwealth, is a state agency entitled to the protection of governmental immunity.[6] As a result, the University is insulated from suit unless governmental immunity has been specifically waived.[7] KRS 45A.245(1) provides:

> Any person, firm or corporation, having a lawfully authorized written contract with the Commonwealth at the time of or after June 21, 1974, may bring an action against the Commonwealth on the contract, including but not limited to

---

[2] *See Breathitt County Bd. of Educ. v. Prater,* 292 S.W.3d 883, 887 (Ky. 2009).

[3] *University of Louisville v. Rothstein*, 532 S.W.3d 644, 647 (Ky. 2017) (citations omitted).

[4] *Hazard Coal Corp. v. Knight,* 325 S.W.3d 290, 298 (Ky. 2010).

[5] *Parker v. Webster Co. Coal, LLC*, 529 S.W.3d 759, 765 (Ky. 2017).

[6] *Furtula v. University of Kentucky*, 438 S.W.3d 303, 305 (Ky. 2014).

[7] *See Commonwealth v. Whitworth,* 74 S.W.3d 695, 700 (Ky. 2002).

actions either for breach of contracts or for enforcement of contracts or for both. Any such action shall be brought in the Franklin Circuit Court and shall be tried by the court sitting without a jury. All defenses in law or equity, except the defense of governmental immunity, shall be preserved to the Commonwealth.

In *University of Louisville v. Rothstein,* we determined that KRS 45A.245 waived immunity for all written contracts with the state, including written employment contracts.[8] As such, the determination of whether the University is entitled to governmental immunity in this case depends on whether Dr. Britt executed a "lawfully authorized written contract" with the University.[9]

The essential elements of a valid contact are an offer and unequivocal acceptance, a certain and complete recitation of the material terms, and consideration.[10] Under Kentucky law, the terms of the contract must be sufficiently definite to enable the court to determine the measure of damages in the event of breach.[11] An employment agreement for a specified term must demonstrate an obligation by the employee to render service for a definite and

---

[8] 532 S.W.3d at 647.

[9] Per KRS 45A.030(8), a "contract" means: "all types of state agreements, including grants and orders, for the acquisition, purchase, or disposal of supplies, services, construction, or any other item..." The KPMC defines "writing" or "written" as letters, words, or numbers, or their equivalent, set down by handwriting, typewriting, printing, photo stating, photographing, magnetic impulse, mechanical or electronic recording, or other form of data compilation." KRS 45A.030(32).

[10] *See, e.g., Hines v. Thomas Jefferson Fire Ins. Co.,* 267 S.W.2d 709 (Ky. 1953), *Cantrell Supply, Inc. v. Liberty Mut. Ins. Co.,* 94 S.W.3d 381, 384 (Ky. App. 2002).

[11] *Kovacs v. Freeman,* 957 S.W.2d 251, 254 (Ky. 1997).

fixed period and a reciprocal obligation on the employer's part to retain the employee's services.[12]

The University claims that it never executed a valid written contract with Dr. Britt during her term of employment, arguing that no document in the record sets out an intent to be bound to the terms that Dr. Britt seeks to enforce. While we agree that the record does not support the contention that Dr. Britt worked under a written contract every year that she worked at the University, we hold that the parties did execute a series of valid, written contracts for at least five of those years.[13]

i. *The 2003 Recommendation Letter*

First, we consider the 2003 recommendation letter from Dean Brennan to Dr. Britt. On one hand, the letter sets out in detail the terms of Dr. Britt's eventual appointment. It provides that the appointment will last for one year; specifies a salary of $41,200; and details the procedures by which Dr. Britt will receive her work assignment. On the other hand, the letter plainly states that Dean Brennan intends to *recommend* Dr. Britt be appointed by the Provost and the Board of Trustees. That is, Dean Brennan expressly makes the appointment contingent on the Board's acceptance of the recommendation. The University seizes on this language, asserting that the letter is, at most, a

---

[12] *See, e.g.*, *Clark v. Cincinnati, N.O. & T.P. Ry. Co.*, 79 S.W.2d 704 (Ky. 1935); *Dysart v. Dawkins Log & Mill Co.*, 300 S.W. 906 (Ky. 1927).

[13] Based on our review of the record, Dr. Britt did not receive a writing confirming her appointment for either the academic year 2005-2006 or academic year 2010-2011.

contractual promise for Dean Brennan to convey his recommendation to the Board, not a promise to hire Dr. Britt.

We acknowledge that the University is correct insofar as Dean Brennan's only affirmative representation in the letter is that he will recommend Dr. Britt's appointment on the included terms. However, the parties do not dispute that Dr. Britt did in fact work as an Assistant Professor of Fine Arts in 2004-2005. Nor do they dispute that Dr. Britt received a salary consistent with the terms of the agreement. Thus, we must consider whether the University ultimately ratified and adopted the recommendation letter as an employment agreement with Dr. Britt.

Under Kentucky law, a principal who was not a party to an agreement may become bound by its terms if it later adopts and affirms the agreement and the agent initially entered the agreement on behalf of the principal.[14] Ratification of the unauthorized act of an agent may either be express or implied.[15] Express ratification occurs when the principal affirms the act by written or spoken words, whereas a principal impliedly ratifies an action through their conduct, such as the acceptance of the benefits of a contract.[16] However, "[r]atification is not to be presumed[;] it must be proven and the burden rests upon [the party] who alleges it."[17]

---

[14] *Fulton Cnty. Fisc. Ct v. Southern Bell Tel. & Tel. Co.*, 158 S.W.2d 437, 439 (Ky. 1942).

[15] *See St. Joseph Healthcare, Inc. v. Thomas*, 487 S.W.3d 864 (Ky. 2016).

[16] *Id.*

[17] *Fulton County Fiscal Court,* 158 S.W.2d at 439.

Here, the record does not contain evidence of the University or an authorized agent expressly affirming the proposed agreement. The only indication of such approval is the evidence of the parties' subsequent conduct. Dr. Britt worked for the University in the role the recommendation provided and received numerous letters "continuing her appointment." Additionally, neither party contests that the Board did in fact appoint Dr. Britt to the recommended position. On balance, we determine that the University's subsequent conduct indicated an intent to ratify and adopt the recommendation letter as a binding employment agreement for the academic year 2004-2005.

*ii. The Continuation Letters*

The 2006-2009 appointment letters each contain the requisites of contract formation. Each letter begins with the same sentence: "This is to inform you of the continuation of your employment as Assistant Professor of Fine Arts..." followed by the start and end dates of the upcoming academic year. On its face, the statement offers Dr. Britt employment as an Assistant Professor in the Department of Fine Arts for a definite and specified term (i.e., the upcoming academic year). Each letter also concludes in the same manner: "Please sign and return the original copy of this letter to the Center for Faculty Personnel, Grawemeyer Hall, Room 201[,]" followed by the Provost's signature and a space for the employee's signature. In this way, each letter specifies the required manner of assent to the offer of appointment. Dr. Britt signed and

returned each letter, demonstrating that she accepted the offer of continued employment.

The University argues that no document provided to Dr. Britt was sufficiently definite to permit enforcement. We disagree. Each letter specifies that the University wishes Dr. Britt to continue her work as an Assistant Professor of Art History for the upcoming year. In return, they agree to compensate her. While the letter does not state Dr. Britt's salary or specify the exact tasks she was to perform, the absence of those terms does not render the agreement unenforceable. Importantly, the letter provides that the University intends to *continue* Dr. Britt's employment. On its face, this indicates that— absent an agreement to the contrary—the parties intended for Dr. Britt to perform substantially similar tasks for the same compensation due under her prior appointment. A reviewing court could determine if breach occurred, and if so, the measure of damages, by reference to the parties' prior performance.

Moreover, both the language of the agreement and relevant personnel documents indicate that annual tasks are determined at the college or department level. Each letter states: "An annual statement of work assignment and compensation will be provided to you by the dean (or designee) of your unit and will set out your assignment for each school year." Under The *Redbook*, faculty are expected to divide their time between research, teaching, and service; the specific allocation of time between those categories is determined on a yearly basis. Essentially, each professor is bound to perform a certain degree of research, service, or teaching each term, but the specific tasks to be

performed are set by a manager (i.e., the Dean or a designated faculty member). Such an arrangement does not render performance indefinite. Resultingly, we determine that Dr. Britt executed valid written contracts with the University for the academic years 2006-2007 through 2009-2010.

**C. Incorporation by Reference**

The existence of written contracts for the foregoing years does not end our inquiry. KRS 45A.245(1) requires all breach of contract actions to be brought "on the contract." Dr. Britt alleges that University breached its agreements by failing to comply with certain policies contained in The *Redbook* and associated personnel policy statements. As such, any provision that Dr. Britt claims is breached must be included or incorporated in a written employment agreement to be actionable.[18]

Kentucky recognizes the common law doctrine of incorporation by reference. "For a contract validly to incorporate other terms, 'it must be clear that the parties to the agreement had knowledge of and assented to the incorporated terms.'"[38] In addition, there must be "clear language [ ] express[ing] the incorporation of other terms and conditions."[19]

We consider each of the parties' contracts in turn. The 2003 Recommendation Letter states:

---

[18] We emphasize that our inquiry is restricted to determining the existence of a valid written agreement and defining its scope. Given the limited scope of our review, we take no position on whether either party breached any portion of their contracts.

[19] *Dixon v. Daymar Colls. Grp, LLC*, 483 S.W.3d 332, 344 (Ky. 2015) (quoting 11 WILLISTON ON CONTRACTS § 30.25 (4th ed. 2014)).

"the conditions governing employment at the University of Louisville are contained in the University's governance document, The *Redbook*. Specific terms applicable to your appointment in the College of Arts and Sciences are contained in the College's constitution and By-Laws, in the College's Personnel Policy and Procedures and in the Constitution and By-laws of the Department."

The letter additionally provides that all personnel reviews and termination proceedings are "subject to" the provisions of The *Redbook*.

Each continuations letter provides:

[t]he terms and conditions of employment in the University of Louisville herein specified include all rules and regulations promulgated on the authority of the University of Louisville Board of Trustees and the governance document known as The *Redbook*. The appointment as Assistant Professor of Fine Arts is subject to the tenure policy of the University of Louisville. Under the policy of The *Redbook*, tenure in this position would be awarded July 1, 2011 should it be mutually agreeable to make renewals of this appointment beyond this date.

The Court of Appeals considered the foregoing language and concluded that it was not specific enough to incorporate the terms of The *Redbook*.[20] We disagree. A plain reading of each letter indicates that the parties intend for the provisions of The *Redbook* relevant to Dr. Britt's position as Assistant Professor to be a part of the employment agreement of the parties. To "govern" means

---

[20] The University argues, and the Court of Appeals agreed, that this Court's decision in *Furtula v. University of Kentucky*, 483 S.W.3d 303 (Ky. 2014), indicates that The *Redbook* provides solely an implied contract to Dr. Britt. *Furtula*, however, is distinguishable from this case. There, the employees did not allege that they had an express, written employment agreement, so they attempted to prevail on implied contract grounds. Here, Dr. Britt has a written agreement with the University that incorporates certain provisions of The *Redbook*.

either "to control, direct, or strongly influence the actions and conduct of (another)," or "to serve as a precedent or deciding principle for."[21] "Subject to," in turn, means "affected by or possibly affected by (something)."[22] The University, in its written agreements, has stated that The *Redbook* shall control, decide, or affect its relationship with Dr. Britt. As a result, we find the provisions of The *Redbook* and its associated personnel policies relevant to Dr. Britt's position, including but not limited to the University's policies regarding tenure, personnel review, and termination, to be validly incorporated into each of the foregoing contracts.

**D. Statute of Limitations**

The University argues that, regardless of the validity of any written agreement between Dr. Britt and the University, Dr. Britt's breach of contract claim is time-barred under KRS 45A.260. We agree.

Section 231 of the Kentucky Constitution permits the General Assembly to "direct in what manner and in what courts suit may be brought against the Commonwealth."[23] Pursuant to this authority, the General Assembly passed KRS 45A.260(2), which provides that any claim arising under the KPMC, other than a construction contract executed by the Transportation Cabinet under

---

[21] Merriam–Webster Dictionary (online ed.).

[22] Merriam–Webster Dictionary (online ed.).

[23] Ky. Const. § 231.

KRS chapters 175, 176, 177, and 180 "shall be commenced in Franklin Circuit Court within one (1) year from *the date of completion specified in the contract.*"[24]

The Court of Appeals has interpreted this provision narrowly. In *Kovachevich v. University of Louisville*, a physician and professor at the medical school refused to execute his employment contract for the year 1976-1977 but continued working for the university through May of 1978.[25] The following June, the physician filed suit based on his 1977 employment contract. The Court of Appeals ultimately held that the claim was not timely filed because the contract he was suing under terminated on June 30, 1977, notwithstanding the fact that the physician continued his employment with the University.

The Court of Appeals adopted a similarly strict approach in *Jasper Contracting Co. v. Commonwealth.*[26] There, the parties executed a valid modification of their original contract which extended the completion date by 97 days.[27] More than one year after the contractor failed to perform by the extended deadline, the Commonwealth stated that they would only pay for the work completed. *Id.* The plaintiff filed suit, arguing that the suit was timely because the work had not yet been completed. Ultimately, the Court rejected this argument, holding that the accrual date for any claim arising under KRS

---

[24] KRS 45A.260(2) (emphasis added).

[25] 597 S.W.2d 621 (Ky. App. 1980).

[26]  890 S.W.2d 296 (Ky. App. 1994).

[27] *Id.*

45A.260(2) was the completion date as stated in the contract or in a valid modification of the contract.[28]

Here, the University urges this Court to extend the reasoning of *Jasper Contracting* and *Kovachevich* to this case. We agree that such extension is appropriate. When interpreting a statute, we "accord to words of a statute their literal meaning unless to do so would lead to an absurd or wholly unreasonable conclusion."[29] If the plain language of a statute is clear and unambiguous, the plain language controls.[30] In considering whether a given statute waives governmental immunity, "we will find waiver only where stated 'by the most express language or by such overwhelming implications from the text as will leave no room for any other reasonable construction.'"[31]

Application of these principles to the statute and contracts at hand compels our decision that Dr. Britt failed to file suit within the appropriate time. The General Assembly, acting pursuant to its constitutional authority, created a right of action against state agencies for breach of written contracts. Pursuant to the same authority, they defined the limitations period applicable to such claims as being one year from the date of completion of the written contract. In this case, the last written contract executed by the parties contained a termination date of July 30, 2010. While the University's

---

[28] *Id.*

[29] *Cosby v. Commonwealth,* 147 S.W.3d 56, 59 (Ky. 2004) (citations omitted).

[30] *See Rothstein,* 532 S.W.3d at 647.

[31] *Withers v. University of Kentucky*, 939 S.W.2d 340, 344 (Ky. 1997) (quoting *Murray v. Wilson Distilling Co.*, 213 U.S. 151, 171 (1909)).

procedures provided that Dr. Britt would be eligible for tenure in 2011, no provision of the contract guaranteed her employment until that date. Nor did any provision extend the date of her employment through 2011. Under her written agreement, Dr. Britt could have been terminated prior to her tenure review and, so long as the termination complied with the contract's procedures for termination, no breach would have arisen. That Dr. Britt continued to work at the University through the spring semester of 2011 without a written agreement does not affect the limitations period under the statute. Thus, we find Dr. Britt's breach of contract claim, brought in January 2012, to be untimely filed.

### III. CONCLUSION

Because we find that Dr. Britt's claim was filed outside of the limitations period of KRS 45A.260, we affirm the Court of Appeals' reversal of the Franklin Circuit Court's denial of the University's motion for summary judgment.[32]

Minton, C.J.; Conley, Hughes, Keller, Lambert and VanMeter, J.J.; sitting. Nickell, J. not sitting. Minton, C.J.; Conley, Hughes, Keller, Lambert and VanMeter, J.J. all concur.

---

[32] The Court of Appeals decided that even if Dr. Britt had a written contract with the University, sovereign immunity still applied because the contract did not address her entitlement to tenure, the sole issue in her breach of contract action. While we disagree with the Court of Appeals on this point, we reach the same conclusion on separate grounds. Sovereign immunity is waived in a contract action under KRS 45A.245(1) only if that action is brought within one year as provided by KRS 45A.260.

COUNSEL FOR APPELLANT:

Alton D. Priddy
Thomas J. Schulz
Chelsea Dermody
PRIDDY, CUTLER, NAAKE & MEADE, PLLC

COUNSEL FOR APPELLEES:

Donna King Perry
Jeremy S. Rogers
Matthew Barszcz
DINSMORE & SHOHL LLP